## JOHNSON *vs.* WETMORE & CHAMPLIN.

A general demurrer to a complaint, on the ground that the complaint does not state facts sufficient to constitute a cause of action, is sufficient. The demurrer need not point out the defects, or show why the facts do not constitute a cause of action.

Upon a complaint alledging that the defendants have fraudulently obtained from the plaintiff, who is old, infirm, and blind, a certain writing, without consideration, of the contents of which he is ignorant, but which he is informed and believes is under seal, conveying to the defendants some interest in the plaintiff's pension or in lands bestowed by the general government upon pensioners; that they intend to avail themselves of some benefit or advantage by means of such writing; and that they refuse either to deliver up said paper or inform the plaintiff of the contents thereof, a court of equity has jurisdiction to direct the writing to be discovered and surrendered by the defendants, and to order it to be canceled.

The conduct of the defendants, in refusing to produce the paper, or to disclose its contents, will authorize the court to infer that they have a writing, conveying a right or interest which they expect to make beneficially available, and that they at least think it valuable. The court will not therefore presume such instrument to be void upon its face

DEMURRER to complaint. The complaint charged that on the 28th of August, 1850, the defendants fraudulently obtained from the plaintiff, who was old, infirm and blind, a certain writing, without consideration; that the plaintiff was ignorant of the contents of the paper, and that the defendants, although requested, had refused either to deliver up said paper or inform the plaintiff of the contents thereof; but that the plaintiff was informed and believed that said writing was under seal, conveying to the defendants, or one of them, some interest in the plaintiff's pension, or some right that he had or might have to moneys or lands bestowed or to be bestowed by the general government upon pensioners; and that they, or one of them, intended to avail themselves of some benefit or advantage by reason of the terms and conveyance in said paper contained. The plaintiff prayed that the writing or paper might be discovered and surrendered by the defendants, and be canceled. The defendants demurred to the complaint, and assigned the following causes: That the complaint did not state facts sufficient to constitute a cause of action; that the court had no jurisdiction

of the subject matter of the action; that the writing alledged in the complaint to have been obtained by the defendants was void by statute; and that the plaintiff had an ample remedy at law.

*S. A. Givens,* for the plaintiff.

*S. Gordon,* for the defendants.

MONSON, J. The plaintiff contends that the objection raised by the demurrer, that the complaint does not state facts sufficient to constitute a cause of action is too general; and he insists that the demurrer should point out the defects, and show why the facts do not constitute a cause of action.

The decisions upon this point have not been altogether uniform, but I am inclined to follow those of Justices Willard, Gridley and Mason, (4 *How. Pr. Rep.* 226. 3 *Id.* 280. 5 *Id.* 113,) in preference to the decision of Justice Sill, (4 *How.* 98,) without however recognizing any distinction between a demurrer to a complaint, and a demurrer to an answer, which Justice Mason, in 5 *How.* 113, seems inclined to raise. Those authorities authorize the allegation in the demurrer as in this case, that complaint does not state facts sufficient to constitute a cause of action. Another ground of demurrer is that the court has no jurisdiction of the subject of the action; that the writing alledged in the complaint to have been obtained by the defendants, is void by statute, and that the plaintiff has an ample remedy at law. In *Noah* v. *Webb,* (1 *Edw. Ch. Rep.* 608,) V. C. McCoun said, "The power of the court of chancery to compel bonds and other instruments, in the nature of securities, to be given up and cancelled is not to be disputed. And in the exercise of this power, so far as the point of jurisdiction is concerned, it matters not whether such instrument could or could not be enforced at law; nor whether it is void upon its face or shown to be void by evidence *aliunde.* Still the power will not be exercised in every case of the kind. It rests in sound discretion." Again, "There are many cases in the books to show that although the

obligation and penalty are gone and the legal remedy is lost, yet so far from ordering the bond to be given up, the condition of it will be regarded in the light of an agreement, and its performance enforced." (*Id.* 612.) "Wherever they appear to be fair in all respects and founded upon a sufficient consideration." (*Id.* 615.) "Instances however may occur, in which the court may be called upon to exert its authority in an opposite direction, and order instruments of this kind to be given up and canceled. But the justice, propriety or necessity for the measure must be very apparent. The party claiming it should show clearly and beyond all reasonable doubt, not only that the instrument is void in law and can never be enforced there, but that in equity also it never ought to be enforced or attempted to be made use of for any purpose, against him." (*Id.*)

In *Hamilton* v. *Cumming*, (1 *John. Ch. Rep.* 522,) the chancellor says, "It is every day's practice to order instruments to be delivered up of which a bad use might be attempted to be made at law, although they could not even there entitle the holder to recover. It is not very apparent why a doubt could have been started in some of the modern cases as to the general jurisdiction of the court, when we consider the uniform tenor and language of the more ancient decisions, and which do not appear to have turned upon the distinction whether the instruments were or were not void at law. In *Whittingham* v. *Thornburgh*, (2 *Vern.* 206.) *Goddort* v. *Garrett*, (*Id.* 269,) and *DeCarta* v. *Scandrel*, (2 *P. Wms.* 170,) policies of insurance procured by fraud were ordered to be delivered up and canceled, though the fraud was equally a defense at law. And in another case, (*Law* v. *Law, Cases Temp. Talbot*, 140,) Lord Talbot ordered a bond to be cancelled, and charged the defendant with costs, without deciding whether or not the bond was good at law." Again, at page 524, the chancellor says that in the case of *Law* v. *Law*, the whole consideration was spread out upon the bond, and that as the case is reported in *Peere Williams*, the lord chancellor was inclined to consider the bond as void at law as well as in equity, and yet he canceled the bond without sending the parties to law. In 1 *John. Ch. Rep.*

Johnson *v.* Wetmore.

524, the bond was good on its face, and void only from facts appearing in the defendant's answer, viz. that it was given upon a trust which. he, the defendant, ought not to disclose, and depended upon a contingency which had never happened, and which was only within the reach of possibility, and that the defendant had held it for twenty-seven years. The chancellor said such bond could not be permitted to endure for ever. And we, says Kent, " can not recognize any trust which is not disclosed, and is therefore unknown. It is not convenient or just that such a bond should continue with a pretension to the assets in the hands of the plaintiff. It might embarrass their application, or weaken their security, or poison their enjoyment. It is immoral for a person to retain a bond which is useless to him and an annoyance to others. It must therefore be delievered up and canceled."

In 1 *Hopkins*, 143, the court allowed a deed alledged to be fraudulent to be brought into court for inspection, and refused to dissolve an injunction against ejectments prosecuted on such deed. In *Petit* v. *Shepherd*, (5 *Paige*, 501,) the chancellor says, " The jurisdiction of this court to set aside deeds and other legal instruments which are a cloud upon the title to real estate, and to order them to be delivered up and canceled, appears to be now fully established, citing 1 *John. Ch. Rep.* 517, and various other cases.

In *Van Doren* v. *Mayor, &c. of New- York*, (9 *Paige*, 389,) the question was whether the corporation of the city of New-York had authority to impose assessments for the purpose of laying out certain streets. The court decided that they had, and against the partition contended for by the complainant, and then proceeded, perhaps unnecessarily, to say, " But if the objection to the right of the common council was well taken it would only show that this court had no jurisdiction in this case. For a valid legal objection appearing upon the face of the proceedings through which the adverse party can alone claim any right to the complainant's land is not in law such a cloud upon the complainant's title as can authorize a court of equity to set aside or stay such proceedings. That can never be considered a legal cloud which can not for a moment obstruct the unaided rays of

legal science when they are brought to bear upon the supposed obscurity. But where the claim of the adverse party to the land is valid upon the face of the instrument or the proceedings sought to be set aside, as where the defendant has procured and put upon record a deed obtained from the complainant by fraud, or upon a usurious consideration, which requires the establishment of extrinsic facts to show the supposed conveyance to be inoperative and void, a court of equity may interfere and set it aside as a cloud upon the real title to the land."

In *Cox* v. *Clift*, (1 *Comst.* 122,) the court said, "Whenever it is apparent from the writing or deed itself that no danger to the title or interest of the complainant is to be apprehended, a court of equity will not entertain a bill for the cancellation or delivery of the instrument." In that case the bill alledged that a certain deed executed on a sale on foreclosure of a mortgage executed to the state purported to convey the whole of 62½ acres when it should only convey a part. The court held that the allegation was unfounded in fact. In this same case before the supreme court, 3 *Barb.* 487, Gridley, justice, after referring to 9 *Paige*, 389, before cited, and to 3 *Mylne & Craig*, 97, in which Lord Cottenham disclaimed jurisdiction to set aside a contract void on its face, because the courts of law are adequate to afford relief and therefore the interference of a court of equity is unnecessary, proceeds to say, " But it does not follow that when the deed that is supposed to cast a cloud upon the complainant's title, affords prima facie evidence of the validity of the adverse claim, and the complainant's defense consists of extrinsic facts depending on the evidence of witnesses whose testimony may be lost by death, chancery would not grant relief." (3 *Barb. S. C. Rep.* 488, 490.) This is not a case where the testimony which is essential to the complainant's defense is liable to be lost by the death of witnesses, but the testimony consists of record evidence, which is no more liable to loss or destruction than the public records which form the muniments of title of all the real property in the state.

If the principle laid down in the case of *Hamilton* v. *Cummins*, (1 *John. Ch.* 517,) and other cases above referred to, is

somewhat circumscribed by the doctrine contained in the cases of *Cox* v. *Clift* and *Van Doren* v. *Mayor, &c. of New-York*, yet the power of the court of chancery as acknowledged in these —the cloak of authority according. to the pattern fashioned in these cases—contains folds sufficiently ample to encircle the case before me. Were it admitted that the court would not exercise jurisdiction in a case where the instrument in question was void on its face, and the weight of authority seems to be otherwise, or at least to be doubtful; (*see* 6 *Barb.* 605;) yet how can we decide this to be such a case so long as we are not permitted to see its face? The defendants, although requested, refused to produce the writing or disclose its contents. In 1 *John. Ch.* 524, Chancellor Kent refused to recognize a trust which the defendant refused to disclose, and was therefore unknown. Shall the defendants be allowed to withhold the writing, and then urge an objection founded on its contents, with which none but themselves are acquainted? If such an objection is valid, and the fact will warrant the objection, the defendants have only to produce the writing, and the bill must be dismissed. This objection would still be available after the defendants shall have answered and furnished a copy of the writing. I do not think the court is now called upon to decide whether the plaintiff is entitled to bounty lands, or to discuss or decide any other hypothetical question. The defendants are charged with having obtained a writing fraudulently, and which, as the plaintiff believes, conveys some interest which he has as a pensioner, whence the defendants, or one of them, mean to derive some benefit, and which would consequently result in a corresponding loss or damage to the plaintiff. The defendants refuse to produce it, or to disclose its contents. Have we not a right, then, to infer that they have a writing which conveys a right or interest which they expect to make beneficially available? Does not their position not only authorize but require us to put an interpretation upon the writing, to them the most unfavorable? We are not to presume that it is good for nothing, but rather, considering their concealment, that they at least think it valuable.

I cannot see that this case is liable to the objection for which

Johnson *v.* Wetmore.

the case of *March* v. *Davison*, (9 *Paige*, 580,) is cited to sustain. In that case the plaintiff had charged that the defendant was guilty of manslaughter, for which charge an action of slander was brought, and then the plaintiff filed his bill to compel the defendant to state and admit facts known only to himself, which should constitute the crime of manslaughter, so as to enable the plaintiff successfully to defend the slander suit.

Without deciding whether this would be a proper ground of demurrer, according to the 144th section of the code, or whether the facts stated, and the circumstances under which it is alledged in the complaint that the writing was obtained, amount to a criminal offense, suffice it to say that however that may be, the defendants are not compelled to admit or state them to be true. The plaintiff asks that the paper be discovered and surrendered by the defendants, and be canceled. They are at liberty to decline answering, and let the case go by default; or, perhaps, upon a proper application, the court might excuse the defendants from answering on oath; about which, of course, I mean not to express an opinion.

Upon the whole, therefore, after bestowing the best attention upon this case of which I am capable, my mind is led to the conclusion that the demurrer is not well taken, and that judgment must be given for the plaintiff, with leave, however, to the defendants to put in an answer in twenty days after service of notice of the rule upon this decision, on payment of fifteen dollars costs.

Judgment accordingly.

[DELAWARE SPECIAL TERM, February 17, 1851. *Monson*, Justice.]